[No. 23808. Department Two. August 29, 1932.]

W. R. SWANSON, *Respondent,* v. FRANK M. MOHR *et al., Appellants.*[1]

*G. E. Lovell,* for appellants.
*Fred S. Duggan,* for respondent.

MILLARD, J.—Frank M. Mohr was the president and the operator of the Spokane Security Finance Com-

[1]Reported in 14 P. (2d) 8.

pany, a corporation, in Spokane, engaged in the business of lending money on chattels. A loan by that company of $360 to E. D. Wilcox on October 16, 1930, was payable in twelve equal monthly installments. On November 1, 1930, that company made a loan of $126, payable in six equal monthly installments, to E. D. Wilcox and William J. King. Wilcox and King signed the two notes for the loans, and executed a mortgage to the finance company on certain chattels as security for the payment of the two notes. On December 2, 1930, William J. King borrowed one hundred dollars on his promissory note from the finance company.

The subject matter of this controversy is the promissory note of W. H. Tallyn, under date of November 20, 1930, in the sum of five hundred dollars, payable to Frank K. Wade, for stock in a mining company sold to Mr. Tallyn by King and Wilcox.

Mr. King was indebted to the Disabled Veterans' Association of Spokane for moneys for which he had not accounted. For the purpose of collecting the money, the association appointed a committee, of which W. R. Swanson was a member. On December 10, 1930, when Mr. King conferred with the committee concerning the shortage, he had in his possession the Tallyn note for five hundred dollars. King offered to indorse and deliver the note to the association as security for the payment of his debt to it. The association accepted the offer, but, as the note was not then indorsed by the payee (Mr. Wade), the same was returned to King, presumably to obtain Wade's indorsement.

King took the note to the finance company, where he left it as security for payment of his note of December 2, 1930, in the sum of one hundred dollars. He returned to the committee, informed the members thereof what he had done, and gave to Swanson, for the

veterans' association, a written assignment of all his interest in the Tallyn note in excess of his indebtedness of one hundred dollars to the finance company. Swanson and King went to Mr. Mohr's office and advised him of the assignment. Mr. Mohr did not then inform Mr. Swanson that the note was held as security for any indebtedness of King in excess of one hundred dollars, nor was any claim then made that the note was security for the payment of the indebtedness of Wilcox.

The assignment, a copy of which was mailed to the finance company's president January 10, 1931, reads as follows:

"Spokane, Washington

"Mr. F. Mohr, December 10, 1930.
"Security Finance Company,
"607-608 Sherwood Building,
"Spokane, Washington.
"Dear Sir:

"I hereby assign my equity in the unused portion ($400.00) of the note of W. H. Tallyn, Cheney, Washington, due July 1, 1931, to W. R. Swanson, Spokane, Washington, and this is your authority to hold same for him and to pay to him the amount collected at maturity, over and above the amount due you from me at that time or to turn the note over to him when I shall have discharged my obligation under my note for $100.00 which you hold.

"It is hereby understood that I am not to have the use of the said W. H. Tallyn note for the purpose of obtaining any further credit in the meanwhile. It is further understood herewith that this notice and agreement cannot be cancelled except by the written release of W. R. Swanson.

(Signed) "William J. King."

The foregoing was acknowledged by King before a notary public on December 10th, 1930. Below that

acknowledgment is the formal assignment by Mr. Swanson, under date of January 9th, 1931, of the note to the Disabled Veterans' Association.

In June, 1931, a few days prior to the maturity date (July 1, 1931) of the Tallyn note, two members of the veterans' committee called on Mr. Mohr, and told him that

"We expected to redeem the note when it matured, and we told him that—and he told us that someone else was trying to get hold of the note, and we requested him to hold the note until it was due, that we expected to redeem it."

The two committee members talked to Mr. Mohr concerning the deduction of one hundred dollars from the note, it being then understood that one hundred dollars was the amount of the loan for which the finance company was holding the Tallyn note as security.

On June 27th, 1931, two members of the veterans' committee and Mr. Tallyn (the maker of the note) offered Mr. Mohr one hundred dollars in payment of his company's claim. The offer was rejected, Mohr insisting that his company was entitled to $115 additional to satisfy the two notes (one for one hundred dollars and the other for $126). On July 1, 1931, Mr. Tallyn paid to Mr. Mohr the amount ($216.75) demanded, which was credited on the Tallyn note. At that time, Mr. Mohr promised Mr. Tallyn that the note would be sent to the veterans' association within two or three days.

On August 3, 1931, the veterans' association learned of Tallyn's payment, and two members of its committee called on Mr. Mohr and demanded surrender of the note. The demand was refused, Mr. Mohr claiming for the first time that he held the note as security for the payment of the Wilcox loan of $360 in addition to the

two other notes which were paid July 1, 1931. Thereupon, Mr. Swanson brought this action against the finance company and its president for possession of the note.

Alleging that Wilcox claimed some interest in the note, the plaintiff joined him as a party defendant, and prayed that the interest of Wilcox be determined. The answer alleged that Wilcox and King each owned a one-half interest in the Tallyn note which, in November, 1930, Wilcox and King delivered to the finance company as security for the payment of the joint indebtedness of Wilcox and King. The trial court found that the Tallyn note was held by the finance company as security for the payment of one note for one hundred dollars and another note for $126 (both notes are described above); that these two notes were satisfied by Tallyn's payment to the finance company of $216.75; and that neither of the defendants had any further right to or interest in the Tallyn note. Judgment was entered accordingly. Defendants appealed.

Appellants contend there is no evidence that the finance company did not take the Tallyn note as security for all the indebtedness of King and Wilcox; that there is no evidence that Wilcox was not the owner of a one-half interest in the note; and that, under the evidence, the Tallyn note was either security for the payment only of the note for one hundred dollars or security for payment of the entire indebtedness of King and Wilcox to the finance company.

If the note was security for the payment of only the note for one hundred dollars, the appellants have no cause for complaint. Respondent has not cross-appealed, objecting to the receipt by appellants of an amount in excess of that to which the appellants are entitled.

Wade, the payee of the Tallyn note, did not testify. King disappeared, hence his testimony could not be taken. The deposition of Wilcox, who was outside the jurisdiction of the court, was to the effect that he was present with King in the office of Mohr in November, 1930, when the Tallyn note, which was owned by him and King, was delivered to Mohr as security for the payment of the indebtedness of King and Wilcox to the finance company.

If the respondent's witnesses did not testify falsely —the findings reflect the trial court's acceptance of that testimony as true—Wilcox was mistaken. Respondent's witnesses testified that the note was in the possession of King on December 10, 1930, and that he offered it as security for payment of his indebtedness to the veterans' association. The committee returned the note to King in order that he might obtain the indorsement of the payee. Instead, King left the note with the finance company as security for the payment of his indebtedness of one hundred dollars. King then made a formal assignment, in which is recited the fact that the assignment is subject to that indebtedness of one hundred dollars.

Of that assignment, the appellants were informed. They did not then claim that the Tallyn note was held as security for the payment of any other indebtedness. On June 27, 1931, the finance company demanded of Mr. Tallyn payment of an amount sufficient to satisfy the note for one hundred dollars and the balance due on the note for $126. No mention was then made of other indebtedness. On July 1st, 1931, Mr. Tallyn paid to the finance company the amount demanded, and was then informed the note would be surrendered to King's assignee within two or three days. The demand of the veterans' association for

delivery of the note was refused by Mr. Mohr, who then, for the first time, claimed that the Tallyn note was security for other indebtedness.

It is significant that Mohr did not explain why Wilcox, if a half-owner of the note, did not indorse the same in November, 1930, when it is insisted the note was left with the finance company. The note bears the indorsement of the payee Wade and the indorsement of King. No other indorsements are on the note. The present claim of one-half ownership by Wilcox in the note is not consistent with the attitude of the appellants respecting the delivery of the note to the finance company in November, 1930. There is no other reasonable inference to be drawn from the conduct of Mohr, an experienced money lender, than that he then recognized King as the sole owner of the note. Otherwise, Mohr would have required Wilcox to indorse the note. King was then considered by himself, by Mohr and by Wilcox as the sole owner of the note.

A man of Mohr's financial experience is conversant with the law of negotiable instruments. An indorsement of only an interest in a note is not recognized as a negotiation of the note. Rem. Comp. Stat., § 3423. A transfer without indorsement is not in due course, and takes effect only from the date of the actual indorsement which the transferee is entitled to obtain. Rem. Comp. Stat., § 3440.

If the transaction to which Wilcox testified occurred in November, 1930, which the trial court did not (nor do we) believe, Mohr accepted the note with the indorsement of the payee and the indorsement of King, though Wilcox was present. He then knew, if he knew at the time of the trial of this action, that Wilcox owned a one-half interest in the note, yet he did not require Wilcox to indorse the note.

468

The evidence preponderantly supports the trial court's findings; therefore, the judgment should be, and it is, affirmed.

TOLMAN, C. J., BEALS, MAIN, and HOLCOMB, JJ., concur.